IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

IN THE MATTER OF THE SEARCH OF: )
)
) Case No. 3:19-mj-00572-DMS
A black AT&T ZTE Smart Phone with no )
identifiable serial number or model number. )
)

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT APPLICATION

I, David A. Rose III, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property, to wit, three (3) cellular telephones:

2. A black Samsung Galaxy Note 8 with no identifiable serial number or model number (TARGET DEVICE 1). A black AT&T ZTE Smart Phone with no identifiable serial number or model number (TARGET DEVICE 2). A black Nokia Cellphone with no identifiable serial number or model number (TARGET DEVICE 3).

3. The information to be searched is described in the following paragraphs.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code 841 (a) (1) and 846, have been committed and that the items described in Attachment A are evidence, fruits, instrumentalities, and proceeds of those violations are located at the

NOV 2 6 2019

location described in the accompanying search warrant. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband or fruits of these crimes further described in Attachment B.

## AGENT'S BACKGROUND

5. I am a Special Agent, with the Drug Enforcement Administration (DEA), in the Anchorage, Alaska, District Office, and in that capacity declare and state as follows:

6. I have been employed by the Drug Enforcement Administration since December 2018. Prior to employment with the DEA, I was employed as a contractor with DEA working in the DEA's Asset Forfeiture Program and prior to that I was employed as an Insurance Fraud Investigator. In 2015, I earned a Bachelor's of Science Degree in Criminal Justice with a concentration in Investigative Services from the University of New Haven. During the course of my employment and education, I have gained experience in conducting drug investigations and have received the benefit of many years of such experience of fellow agents and officers. During the course of my training with the DEA, I have received training and practical experience in conducting investigations of controlled substances violations in conjunction with agents and officers from other jurisdictions. I have also conducted and assisted in investigations which have led to the arrest and conviction of persons for violations dealing with sales, and possession of cocaine, heroin, fentanyl, methamphetamine, and other controlled substances, money laundering and the seizure and forfeiture of assets. Through these investigations, I have learned how and why these offenders conduct various aspects of their drug trafficking activities, to include manufacturing, packaging, distribution,

NOV 2 6 2019

transportation and concealment of controlled substances and assets and money laundering.

7. During the course of my law enforcement career, I have written and/or executed search and seizure warrants for narcotics, dangerous drugs, and related records, and assisted in the seizure of hundreds of thousands of dollars in proceeds and/or assets derived from such illegal activity.

8. During the course of my employment as a Law Enforcement Officer, I have gained experience in conducting drug investigations and have received the benefit of many years of such experience of fellow agents, investigators and officers.

9. Based upon my training, experience and participation in these and other financial/drug trafficking investigations, and based upon my conversations with other experienced law enforcement agents and officers, with whom I work, I know the following:

   a. In my experience, I have found that the distribution of controlled substances is frequently a continuing activity over months and years. Persons involved in the trafficking of illegal controlled substances typically will obtain and distribute controlled substances on a regular basis, such as a distributor of a legal commodity would purchase stock for sale. Similarly, such drug traffickers will maintain an "inventory" which will fluctuate in size depending upon the demand for and the available supply of the product. It has been my experience that drug traffickers keep records of their illegal activities not only during the period of their drug trafficking violations but also for a period of time extending beyond the time during which the trafficker actually possesses/controls illegal controlled substances. The records are kept in order to

NOV 2 6 2019

maintain contact with criminal associates for future transactions and so that the trafficker can have records of prior transactions for which the trafficker might still be owed money or might owe someone else money. Such records may be found in the form of **text messages on cell phones, or emails on targets' computers, tablets, digital cameras or other portable media devices, or smart phones.**

    b. It is common for members of drug trafficking organizations to maintain records evidencing their illegal activities including books, ledgers, receipts, notes and other papers relating to the transportation, ordering, possession, sale and distribution of drugs and the collection and transportation of drug proceeds. I also know that the aforementioned records are frequently maintained in the drug trafficker's residence and sometimes in the traffickers' vehicle(s), **computers, tablets, smart phones, digital cameras or other portable media devices**.

    c. I know that evidence of excessive wealth is probative evidence of crimes involving greed, to include the distribution of controlled substances. Therefore, receipts showing the expenditure of large sums of money and/or the expensive assets themselves are evidence of drug trafficking. I also know that drug traffickers commonly keep the expensive assets themselves and/or documentation of the purchase of the asset (receipts, warranty cards, etc.) in or about their residences, and sometimes in their vehicles, businesses, **smart phones, tablets, computers or portable media devices.**

    d. It is increasingly common for members of drug trafficking organizations to utilize direct cash deposits into a co-conspirator's bank accounts to facilitate the movement of U.S. currency throughout the trafficking organization's area of

NOV 2 6 2019

operations. I know that members of drug trafficking organizations will utilize nominee depositors to disguise the origination of the funds and to break up the amount being deposited by any one person. I know that the actual owner of the currency will commonly provide the nominee depositor with handwritten information concerning the intended recipient's name and account number and amounts of money to be deposited. I also know that, in an attempt to keep track of the proceeds, it is common for the drug traffickers and/or nominee depositors to maintain copies of the deposit slips. I also know that the aforementioned items are frequently maintained in the drug traffickers' and/or nominee depositor's residence, businesses, or vehicles. In addition, drug traffickers can keep such records on their **smart phones, tablets, computers, or portable media devices.**

   e It is common for members of drug trafficking organizations to utilize fraudulent identification in order to purchase airline tickets, send wire transfers, rent residences and storage facilities, and subscribe for telephone/cellular telephone service. I also know that it is common for drug traffickers to keep fraudulent identification nearby and easily accessible to facilitate their flight upon the discovery of their illegal activities by law enforcement. I also know that the aforementioned items are frequently maintained in the drug trafficker's residence, businesses, or vehicles. Records concerning the purchase of airline tickets, rental contracts, and telephone/cellular service are frequently found on the **smart phones, tablets, computers, or portable media devices.**

   f. It is common for drug trafficking organizations involved in the distribution of controlled substances to maintain equipment and supplies (i.e. scales, baggies, cutting agents) on hand over a lengthy period of time. At times, certain retail

NOV 2 6 2019

stores provide customers with loyalty cards that can track a customer's purchases. Frequently, these stores send emails to the members of their loyalty programs that can be found on drug traffickers' **computers, tablets, and smart phones.**

  g. It is common for members of drug trafficking organizations to attempt to recruit couriers to transport drugs and/or U.S. currency throughout the trafficking organization's area of operations. I know that often times a courier's handler will provide the courier with handwritten notes regarding travel itinerary, hotel information, and contact telephone numbers prior to the courier's departing on the trip to transport drugs and/or money. I also know that oftentimes organizations will pay a flat rate (i.e. $1,000 per kilogram of cocaine) plus expenses for the couriers. Therefore, oftentimes the couriers will keep handwritten itemized lists of expenses and/or receipts, in order to be reimbursed. I also know that the aforementioned items are frequently maintained in the couriers' residence or residences and vehicles belonging to members of the drug trafficking organization. In addition, records of airline and hotel purchases are frequently found in email on drug traffickers' **smart phones, tablets, computers, digital cameras or other portable media devices.** Evidence of visiting travel websites can often be found through forensic analysis of these devices.

  h. It is common for members of drug trafficking organizations to take or cause to be taken, photographs and/or videos of themselves and their co-conspirators and associates. It is also common for members of drug trafficking organizations to take or cause to be taken, photographs and/or videos of themselves and/or their co-conspirators with controlled substances, large sums of money, guns and expensive assets (i.e. jewelry

luxury cars). I also know that the aforementioned items are frequently maintained in drug traffickers' residences or businesses, or in their **computers, tablets, smart phones, digital cameras and other portable media devices.**

i. It is common for members of drug trafficking organizations, in an attempt to disguise their identities and illegal activities, to use pre-paid cellular telephones and pre-paid long distance calling cards. I know that oftentimes the only way to connect a subject with a particular pre-paid cellular telephone or calling card is to seize the phone or calling card from the trafficker or his residence. Analyses of these pre-paid cellular phones often provide evidence of a drug trafficker's customers and suppliers, as well as accomplices. This information typically can be found in the address books, call logs and text messages of **wireless cellular telephones, smart phones, computers, tablets and portable media players.**

j. It is common for members of a drug trafficking organization to attempt to legitimize their profits from the distribution of drugs. To accomplish these goals, drug traffickers utilize foreign and domestic banks and the bank's attendant services to include cashier's checks, safe deposit boxes, and money drafts. Drug traffickers will also utilize the purchase/sale of real estate to legitimize their profits. I also know that the records of the aforementioned transactions are frequently maintained in the drug trafficker's residence, business, or vehicles, and also stored on computers, **portable media devices**, and tablets of drug traffickers.

k. It is common for members of drug trafficking organizations to utilize businesses, both real and fictitious, to conceal both the distribution of drugs as well as to

NOV 2 6 2019

conceal the source of their illegal income. It is common for drug traffickers to possess business licenses and articles of incorporation for these businesses, even if the businesses exist only on paper. I also know that these records and documents are frequently maintained in the drug trafficker's residence or business, as well as on drug traffickers' computers, **portable media devices**, and tablets.

l. In my experience, I have found that the same information or data can be restored/recovered from a forensic examination of a computer as you will find following an examination of portable media devices such as thumb drives, removable hard drives, or even digital cameras. This rationale is true mainly because devices such as thumb drives and removable hard drives may be used to save computer internal hard drive space and the data or information maintained within is more commonly pulled from a computer to begin with.

m. The statutory provisions to which the current investigation relates include: (1) Title 21, United States Code, Section 841 (a) (1) and 846, the Distribution of Controlled Substances, the Possession of Controlled Substances with Intent to Distribute, as well as the conspiracy to commit those violations, and (2) Title 18 United States Code Sections 1956, 1957, Money Laundering, and conspiracies to do the same and aiding and abetting the same. I am familiar with the provisions of these statues and based upon my training and experience, I believe that the data described in this affidavit and which is sought by this application for search warrant is evidence of violations under Title 21, United States Code, Section 841 (a) (1) and 846 and Title 18 Sections 1956 and 1957.

NOV 26 2019

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

10. The following is a summary of the property to be searched, and the general place where each device was recovered. The seizure of each device is more fully set forth in subsequent paragraphs.

11. A black Samsung Galaxy Note 8 with no identifiable serial number or model number (TARGET DEVICE 1). A black AT&T ZTE Smart Phone with no identifiable serial number or model number (TARGET DEVICE 2). A black Nokia Cellphone with no identifiable serial number or model number (TARGET DEVICE 3 is currently located at the DEA Anchorage District Office.

## BACKGROUND OF INVESTIGATION

12. On September 14, 2018 at approximately 2:25AM, Alaska State Trooper Jason Somerville was traveling on the Parks Hwy near Knik Goose Bay Rd (KGB) when he observed a 1998 green GMC Jimmy turn on to KGB. He observed the plate on the vehicle to be AK plate JMJ402, registered to a Jess Murphy.

13. Trp. Somerville attempted to conduct a traffic stop on the vehicle which then failed to yield at speeds in excess of 100 mph, passing vehicles unsafely, and driving in the wrong lane of travel. The vehicle ultimately left the roadway and crashed near Vine and Knik Goose Bay Road.

14. The driver later identified as Sedric WILLIAMS (1-8-79) exited vehicle through the driver window and ran down an ATV trail. Tpr. Somerville utilized his taser and as Williams fell to the ground he observed him throw a plastic bag containing something black into the weeds approximately 8 feet away. A search of WILLIAMS

NOV 2 6 2019

produced $86 in cash in his pants pocket. The bag was recovered from the weeds and was found to contain a brown tar like substance that appeared to be heroin. A field test was conducted showing positive for the presence of heroin. The substance was weighed and showed approximately 4.29 Ounces.

15. The vehicle was impounded to the Alaska State Troopers secure storage facility in Palmer AK pending the application and approval of a State of Alaska Search Warrant. Prior to being impounded, Trp. Somerville observed in plain view three cellular phones.

16. On September 14, 2018, Alaska State Troopers Investigator Jared Noll applied for and was granted a State of Alaska Search Warrant for the vehicle. At approximately 11:45AM Investigator Noll executed the State of Alaska Search Warrant for the vehicle and recovered TARGET DEVICE 1, TARGET DEVICE 2, and TARGET DEVICE 3 with in.

17. The cell phones were seized and held by Investigator Noll who then transported the TARGET DEVICES to the Alaska State Troopers evidence facility for safe keeping. On November 21, 2019, TFO Rick Pawlak retrieved the TARGET DEVICES from the Alaska State Troopers evidence facility to the Anchorage DO, where they were placed in temporary storage by SA Rose via CERTS pending search warrant applications.

18. A records check on WILLIAMS confirmed he had an active federal warrant for a Probation Violation for possession of Cocaine. Further investigation revealed WILLIAMS was on Federal Probation for Theft of Firearm and Drug Conspiracy.

NOV 2 6 2019

3:19-mj-00572-DMS          10
Case 3:19-mj-00572-DMS   Document 1-1   Filed 11/26/19   Page 10 of 15

WILLIAMS received Felony convictions for these federal charges.

19. Based on my training and experience, and involvement in this investigation, your affiant knows that drug traffickers commonly use multiple cellular phones to communicate with their criminal associates; telephonically and via text. Cellular phones used by drug traffickers and associates frequently contain evidence regarding the dates and times of the calls to and from criminal associates as well as stored information regarding the telephone numbers, names, alias names, and saved text messages (both sent and received) to and from their criminal associates. Cellular telephones often contain video and photographs of criminal associates, illegal substances, locations and other evidence pertinent to this investigation.

20. Your affiant believes that WILLIAMS used the TARGET DEVICES in furtherance of violation of Title 21 USC 846, 841(a)(1) and (b)(1)(B).

21. Based on the information provided herein, I submit there is probable cause to search the TARGET DEVICES.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

22. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

23. Regarding the TARGET DEVICES, there is probable cause to believe that things that were once stored on this Device may still be stored there, for at least the following reasons:

NOV 2 6 2019

24. Based on my knowledge, training, and experience, and based upon my communications with law enforcement personnel with specialized technical expertise, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

25. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

26. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation; file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

27. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

28. Forensic evidence. As further described in <u>ELECTRONIC STORAGE AND FORENSIC ANALYSIS</u>, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

    b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

NOV 2 6 2019

c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when they were used.

d.  The process of identifying the exact electronically stored information on storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when it was used, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

29.  Nature of examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

30.  Manner of execution. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant

does not involve the physical intrusion onto premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

31. Based on my training, experience, and research, I know that the Devices have the capabilities that allow them to serve as a wireless telephone, a digital camera, a portable media player, a GPS navigation device, and a PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the TARGET DEVICES, which is described in <u>IDENTIFICATION OF THE DEVICES TO BE EXAMINED,</u> in order to seek the items described in <u>ELECTRONIC STORAGE AND FORENSIC ANALYSIS</u>.

Respectfully submitted,

David A. Rose III
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on _11/26/19_

_____
CHIEF UNITED STATES MAGISTRATE JUDGE

NOV 2 6 2019